MICHAEL TERRILL and CAROL TERRILL,
Individually and as Parents and Natural Guardians
of B.T.,

                Plaintiffs,        1:15-CV-0615
                                            (GTS/DJS)
v.

WINDHAM-ASHLAND-JEWETT CENTRAL
SCHOOL DISTRICT; and KERRY OVERBAUGH,
Individually and as Agent of the Board of Education,

                Defendants.
_____

APPEARANCES:                                       OF COUNSEL:

E. STEWART JONES HACKER MURPHY, LLP     JOHN F. HARWICK, ESQ.
  Counsel for Plaintiffs                           DAVID I. IVERSEN, ESQ.
28 Second Street
Troy, New York 12180

GIRVIN & FERLAZZO, P.C.                         SCOTT P. QUESNEL, ESQ.
  Counsel for Defendants
20 Corporate Woods Blvd.
Albany, New York 12211

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this civil rights action filed by Michael and Carol Terrill, individually and as parents and natural guardians of B.T. ("Plaintiffs"), against Windham-Ashland-Jewett Central School District ("the School") and Kerry Overbaugh, individually and as an agent of the School's Board of Education ("Defendants"), is Defendants' motion to dismiss counts three through seven of Plaintiffs' Complaint, as well as Plaintiffs' request for punitive damages, for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P.

12(b)(6). (Dkt. No. 7.) For the reasons set forth below, Defendants' motion is granted and the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims asserted in their first two causes of action.

## I. RELEVANT BACKGROUND

### A. Plaintiffs' Complaint

Generally, Plaintiff's Complaint alleges as follows. B.T. was a student at Windham-Ashland-Jewett Central School in Windham, New York, where she was bullied and harassed by fellow students due to her weight and a medical disability (anorexia/bulimia). (Dkt. No. 1, ¶¶ 11-12, 72 [Pls.' Compl.].) This harassment occurred over the course of 18 months to two years, prior to May 1, 2014, on school grounds as well as other areas under school control, such as the school bus. (*Id.*, ¶ 13.) On May 1, 2014, B.T. attempted to commit suicide by drug overdose. (*Id.*, ¶ 12.) B.T. and her parents complained to the School and Defendant Overbaugh, the School's principal, on multiple occasions regarding B.T.'s treatment by fellow students. (*Id.*, ¶¶ 16, 18.) Defendants undertook no reasonable action in response to these complaints, such as offering support to B.T. and implementing and enforcing an anti-bullying policy. (*Id.*, ¶¶ 17, 19-20, 23-24.) As a result of Defendants' inaction, B.T. sustained serious psychological trauma and emotional distress, and had to begin attending school in a different school district. (*Id.*, ¶¶ 25-28.)

Based upon these allegations, Plaintiffs' Complaint asserts the following seven claims: (1) a claim that Defendants were negligent in their "inaction and unreasonable response to the repeated long-term, reckless, and unwarranted harassment and bullying [of B.T.] by fellow students"; (2) a claim that Defendants were negligent in that they owed a duty to B.T., which

was breached when they failed to reasonably monitor and control the actions of their agents, servants and employees, as well as other students in their school; (3) a claim that Defendants violated the Dignity for All Students Act ("DASA"), N.Y. Educ. Law § 11(7), by allowing the creation and existence of a hostile educational environment for B.T.; (4) a claim that Defendants violated DASA § 12(1) by allowing B.T. to be subjected to harassment and bullying on account of her weight and disability, which effectively barred her from access to an educational opportunity or benefit; (5) a claim that Defendants violated Title IX of the Education Amendments of 1972 by allowing B.T. to be subjected to harassment and bullying on account of her weight and disability; (6) a claim that Defendants violated the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 by allowing B.T. to be subjected to harassment and bullying on account of her weight and disability; and (7) a claim that Defendants violated the Substantive Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 by allowing B.T. to be subjected to harassment and bullying on account of her weight and disability. (*Id.*, ¶¶ 33-92.)

Finally, among the forms of relief demanded by Plaintiffs are seven hundred and fifty thousand dollars ($750,000.00) and punitive damages. (*Id.*, ¶ 92.)

  **B.**  **Parties' Briefing on Defendants' Motion to Dismiss**

    **1.**  **Defendants' Memorandum of Law**

Generally, in their memorandum of law, Defendants assert five arguments. (Dkt. No. 7, Attach. 1 [Defs.' Mem. of Law].) First, Defendants argue that Plaintiffs' Title IX claim (asserted in their fifth cause of action) must be dismissed for the following two reasons: (a) Title IX prohibits discrimination or harassment on account of sex only, not weight or disability; and (b)

even if Plaintiffs could maintain a Title IX claim against the School, there is no individual liability under Title IX and, therefore, this claim should be dismissed as against Defendant Overbaugh. (*Id.* at 4-5.)

Second, Defendants argue that Plaintiffs' DASA claims (asserted in their third and fourth causes of action) must be dismissed because DASA does not provide for a private right of action for monetary damages, either express or implied. (*Id.* at 5-6.) Rather, Defendants argue that DASA relies on the creation and implementation of school board policies to reduce bullying in schools through the appropriate training of personnel, mandatory instruction for studying on civility and tolerance, and reporting requirements. (*Id.* at 6.)

Third, Defendants argue that Plaintiffs' substantive due process claim (asserted in their seventh cause of action) must be dismissed because state (and local) governmental entities are not liable for the failure to protect an individual from harm inflicted by a private party and Plaintiffs' claim does not fall under either of the two exceptions to this general rule. (*Id.* at 7-8.) More specifically, these exceptions include (a) where a special relationship existed between the governmental entity and the harmed party, or (b) when the governmental entity created the danger that caused the harm. (*Id.* at 8.) With respect to the first exception, Defendants argue that it is well established by case precedent that a special relationship does not exist where the governmental entity is a public school district. (*Id.* at 8-9.)

With respect to the second exception, Defendants argue that Plaintiffs have not pled any facts plausibly suggesting that a School employee personally participated in the alleged bullying or that the School took affirmative steps to facilitate the bullying. (*Id.* at 9-10.) Furthermore, Defendants argue that, even if their alleged inaction could be construed as a state-created danger,

Plaintiffs have not alleged facts that are sufficient to "shock the conscience," which is necessary for conduct to rise to the level of a violation of the Fourteenth Amendment. (*Id.* at 10-11.)

Fourth, Defendants argue that Plaintiffs' equal protection claim (asserted in their sixth cause of action) must be dismissed for the following three reasons: (a) individuals with disabilities do not constitute suspect class; (b) no authority exists for the point of law that weight is a suspect classification; and (c) Plaintiffs fail to allege facts plausibly suggesting a class-of-one theory of liability because they have not alleged facts plausibly suggesting that similarly situated students at the School received more favorable treatment than did B.T. and that such differential treatment was not rationally related to a legitimate governmental interest. (*Id.* at 12-14.)

Fifth, Defendants argue that Plaintiffs' request for punitive damages must be dismissed because it is well established that public school districts are immune from such claims. (*Id.* at 14-15.)

### 2. **Plaintiffs' Opposition Memorandum of Law**

As an initial matter, Plaintiffs concede that their Title IX claim, substantive due process claim, and punitive damages request should be dismissed. (Dkt. No. 10, at 2, 5, 7-8 [Pls.' Opp'n Mem. of Law].) With respect to the remaining claims that Defendants' have moved to dismiss, Plaintiffs assert two arguments. (*Id.*, at 2-8.)

First, with respect to their two claims under DASA, Plaintiffs concede that DASA does not grant an explicit private right of action but argue that DASA grants an *implied* right of action. (*Id.* at 2.) More specifically, Plaintiffs argue that the legislative intent of DASA was to prohibit bullying and harassment, to foster civility in public schools, and to prevent disruption or

interference with a student's educational environment, performance, mental, emotional, and well-being. (*Id.* at 3-4.) Furthermore, Plaintiffs argue that, under N.Y. Educ. Law § 18, the provisions of DASA are to be construed liberally to give effect to its purpose. (*Id.* at 4-5.)

Plaintiffs argue that, in the present case, DASA's purpose is to prevent the very type of conduct of which they have complained and that, under DASA, Defendants had a duty to regulate harassment and bullying but failed to do so. (*Id.* at 5.) Accordingly, Plaintiffs argue that they should be allowed to pursue these claims under DASA because, under Defendants' interpretation of the statute, school districts and their administrators would otherwise be allowed to ignore incidents of bullying without fear of repercussion, which would render DASA without any means of enforcement, punishment or deterrence. (*Id.* at 4-5.)

Second, Plaintiffs argue that their equal protection claim should not be dismissed because the Seventh Circuit's decision in *Nabozny v. Pedlesny*, 92 F.3d 446 (7th Cir. 1996), supports a conclusion that Plaintiffs have alleged facts plausibly suggesting an equal protection claim. (*Id.* at 5-7.) In *Nabozny*, a student brought an action against his school district and several school officials alleging that he had been harassed and physically abused by fellow students on the basis of his gender and sexual orientation. *Nabozny*, 92 F.3d at 449. The Seventh Circuit found that the plaintiff had adduced sufficient evidence to raise a genuine dispute of material fact that he had been treated differently on the basis of his gender by demonstrating that the school had had actual knowledge of his abuse but had chosen not to enforce its anti-harassment policy in response, despite having done so in the past in situations involving female students. *Id.* at 454. Relying on *Nabozny*, Plaintiffs argue that they have pled facts plausibly suggesting an equal protection claim for the following five reasons: (a) B.T. suffered from a disability, triggering the

sort of rational basis review triggered in *Nabozny*; (b) B.T. suffered repeated long-term bullying and harassment as a result of her disability; (c) Defendants had actual and constructive knowledge of that harassment; (d) Defendants failed to respond to that harassment; and (e) Defendants' failure to respond was a departure from their expansive anti-harassment policy, thus demonstrating their discriminatory intent. (*Id.* at 7.) In the alternative, Plaintiffs argue that Defendants' request to dismiss this claim based on inadequate pleading is "untimely," because discovery is necessary for Plaintiffs to be able to point to specific instances of discrimination and/or disparate treatment that Defendants argue they have omitted. (*Id.*)

### 3. Defendants' Reply Memorandum of Law

In reply to Plaintiffs' opposition, Defendants assert two arguments. (Dkt. No. 11 [Defs.' Reply Mem. of Law].)

First, with respect to DASA, Defendants argue that the statute does not grant an implied private right of action for the following three reasons: (a) recognizing an implied private right of action under DASA would not be consistent with its legislative purpose and would open the floodgates of litigation against public school districts; (b) a review of DASA's provisions and legislative history reveals that it was intended to be a preventive mandate, rather than a punitive one, because its goal is to compel public schools to develop and implement proactive measures to prevent bullying; and (c) there are several other federal statutes that provide enforcement mechanisms and express remedies for Plaintiffs under the facts alleged in the Complaint, such as the Rehabilitation Act of 1973, the Americans with Disabilities Act ("ADA"), the Individuals with Disabilities Education Act ("IDEA"), as well as the negligence and equal protection claims Plaintiffs have asserted. (*Id.* at 1-8.)

Second, Defendants argue that Plaintiffs' equal protection claim must be dismissed because their Complaint fails to allege facts plausibly suggesting a "class-of-one" theory of liability. (*Id.* at 8.) More specifically, Defendants argue that, because Plaintiffs do not dispute that weight and disability are not suspect or quasi-suspect classifications, B.T. must proceed under a "class-of-one" theory of liability. (*Id.*) Accordingly, Defendants argue that the Complaint fails to allege facts plausibly suggesting that other students at the School received more favorable treatment than B.T., that there is a high degree of similarity between B.T. and those comparators, or that Defendants lacked a rational basis for the alleged difference in treatment. (*Id.* at 10.) Furthermore, Defendants argue that Plaintiffs' reliance on *Nabozny* is misplaced because that case did not concern an equal protection class-of-one claim. (*Id.* at 9.) Rather, *Nabozny* concerned discrimination claims on the basis of gender and sexual orientation, which are recognized quasi-suspect classifications, and, therefore, did not require consideration of a class-of-one theory of liability. (*Id.* at 9.) Finally, Defendants argue that (a) Plaintiff's discovery argument fails to address the fundamental pleading failures of this claim, and (b) in any event, discovery would not cure the fundamental pleading deficiencies in this claim. (*Id.* at 10.)

## II. RELEVANT LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

III.  ANALYSIS

 A.  **Whether Plaintiffs' Claims Under DASA Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 7, Attach. 1, at 12-14 [Defs.' Mem. of Law]; Dkt. No. 11, at 1-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

Both parties agree that DASA does not grant an explicit private right of action. Accordingly, "where a statute does not expressly establish a private right of action . . . a court may look to the overall structure of the legislation to determine if a private right of action should nevertheless be implied." *Martinez v. Capital One, N.A.*, 863 F. Supp. 2d 256, 263 (S.D.N.Y. 2012). "Under New York law, the criteria for determining whether a statute implicitly creates a private right of action include: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent

with the legislative scheme." *Martinez*, 863 F. Supp. 2d at 263 (quoting *Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 633 [N.Y. 1989]). "Of these factors, the third is the most important." *Acevado v. Citibank, N.A.*, 10-CV-8030, 2013 WL 1149666, at *3 (S.D.N.Y. Mar. 20, 2013).

The Court has reviewed the materials in DASA's "bill jacket," which supports Defendants' argument that DASA was intended to be a preventative, rather than punitive, measure. Specifically, in a letter from Assemblyman Daniel O'Donnell, who sponsored DASA in the New York State Assembly, to Governor David Patterson, Mr. O'Donnell stated that "*the Legislature intends [DASA] to be primarily a preventive, rather than punitive, measure; it should therefore be implemented accordingly*, with the emphasis on proactive techniques such as training and early intervention to prevent discrimination and harassment." N.Y. Bill Jacket, 2010 A.B. 3661, Ch. 482 (Letter dated Sept. 7, 2010, from N.Y.S. Assemblyman Daniel O'Donnell, 69th Assembly District, to N.Y. Gov. Patterson) (emphasis added). Similarly, Senator Thomas Duane wrote to Governor Patterson that "DASA focuses on education and prevention of harassment and discrimination *before* it begins rather than punishment after the fact." N.Y. Bill Jacket, 2010 A.B. 3661, Ch. 482 (Letter dated July 16, 2010, from N.Y. Senator Thomas Duane, 29th District, to N.Y. Gov. Patterson) (emphasis in original).

Furthermore, the following exchange between Assemblyman James Conte and Assemblyman O'Donnell in the New York State Assembly before the passage of DASA appears to address the concern that Plaintiffs have raised:

> Mr. Conte: Okay. Finally, just one last question. What is the remedy, if you will, for a student who feels that they were harassed and the school has this policy in place, but doesn't abide by the policy?

> Mr. O'Donnell: *This bill does not address any remedy beyond internally to the school.* The school has an obligation to have a policy. The school has an obligation to have people on staff who know how to deal with the policy. The school has an obligation to protect all children from that conduct. *If, in fact, the school fails, then the school fails. This bill has nothing to do with the remedy outside the school failing.* This bill requires the State Education Department to promulgate regulations to assist schools, if they need assisting, on how to make sure that schools remain an environment that are free from harassment and discrimination.

N.Y. Bill Jacket, 2010 A.B. 3661, Ch. 482 (Record of Proceedings in Assembly, May 17, 2010 [A.3661-C]) (emphasis added). Indeed, DASA does not prevent a student from bringing a claim against his/her school district under IDEA, Title VII, the Rehabilitation Act, or the ADA, a fact acknowledged by Senator Duane in his letter to Governor Patterson in support of the Bill. N.Y. Educ. Law § 17(2); N.Y. Bill Jacket, 2010 A.B. 3661, Ch. 482 (Letter dated July 16, 2010, from N.Y. Senator Thomas Duane, 29th District, to N.Y. Gov. Patterson). Therefore, a finding that DASA does not provide a private right of action does not leave plaintiffs, such as B.T., without enforcement mechanisms and remedies that can be pursued under different statutes to remedy the harm DASA seeks to prevent.

Finally, the Court notes that it has not found any reported decisions permitting a private right of action (whether express or implied) under DASA. Granted, Plaintiffs argue that, in *Simon v. Bellmore-Cent. High Sch. Dist.*, Index No.: 1390/13 (N.Y. Sup. Ct. Nassau Cty. Mar. 14, 2014), *rev'd on other grounds*, 133 A.D.3d 557 (N.Y. App. Div. 1st Dept. 2015), the trial court denied a school district's motion to dismiss a DASA claim asserted by a student's guardians and held that a student attending a private school that was harassed by public school students could sue the school district under DASA for failure to follow the DASA guidelines. (Dkt. No. 10, at 4 [Pls.' Opp'n Mem. of Law]; Dkt. No. 10, Attach. 2 [attaching copy of trial

court decision].)  The Court does not interpret *Simon* to mean that a private right of action can be brought under DASA.  Rather, in a narrow holding, the trial court determined that a public school was obligated to take efforts to protect a student attending a private school from students attending the public school that were harassing and bullying her.  (Dkt. No. 10, Attach. 2, at 6 [attaching copy of trial court decision].)  The Court notes that the issue of a private right of action was never briefed or decided in *Simon*, and the Appellate Division, First Department, never addressed the issue because it found another ground for reversal.  Even if *Simon* could be construed to mean that a private right of action exists under DASA, this Court is not bound by *Simon* and finds that, for the reasons stated above, DASA was not intended to allow for a private right of action.

Accordingly, for all of these reasons, the Court finds that DASA does not provide a private right of action, either express or implied, and Plaintiffs' third and fourth causes of action must therefore be dismissed.

**B.    Whether Plaintiffs' Equal Protection Claim Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 7, Attach. 1, at 5-6 [Defs.' Mem. of Law]; Dkt. No. 11, at 8-10 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

Generally, to maintain an equal protection claim, a plaintiff must "show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person." *Miner v. Clinton Cty.*, 541 F.3d 464, 474 (2d Cir. 2008) (internal quotation marks and citation omitted). A plaintiff must also show that the alleged disparity in treatment cannot survive the appropriate level of scrutiny. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). A "disability is not a suspect classification under the Equal Protection Clause." *Chick v. Cty. of Suffolk*, 546 F. App'x 58, 60 (2d Cir. 2013). Moreover, the Court is not aware of any authority for the point of law that obesity, or "weight," is a suspect classification. However, "[a]lthough the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Sharpe v. City of New York*, 11-CV-5494, 2013 WL 2356063, at *3 n.5 (E.D.N.Y. May 29, 2013) (internal quotation marks and citations omitted). This is called a "class-of-one" claim.

In a class-of-one context, the plaintiff uses "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose–whether personal or otherwise–is all but certain." *Prestopnik v. Whelan*, 249 F. App'x 210, 212-13 (2d Cir. 2007). There must be "an extremely high degree of similarity" between the class of one plaintiff and the "alleged comparators in order to succeed on an equal protection claim." *Sloup v. Loeffler*, 745 F. Supp. 2d 115, 128 (E.D.N.Y. 2010); *see also Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds*, *Appel v. Spiridon*, 531 F.3d 138, 141 (2d Cir. 2008). "Specifically, such plaintiffs must establish that (i) no rational person could regard the

-15-

circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Camac v. Long Beach City Sch. Dist.*, 09-CV-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (citations and quotations marks omitted). "[T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are prima facie identical." *Kamholtz v. Yates Cty.*, 08-CV-6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) (quoting *Neilson*, 409 F.3d at 105).

Here, Plaintiffs have failed to offer any non-conclusory allegations that Defendants discriminated against B.T. because of her medical disability and/or weight, nor do they even point to any similarly-situated students who were treated differently than B.T. Furthermore, when closely examined, Plaintiffs' argument that discovery is needed before they can allege the aforementioned facts acknowledges the insufficiency of their current claims, the defects which the Court finds to be substantive rather than merely formal. Accordingly, Plaintiffs' § 1983 equal protection claim must be, and is, dismissed. *See Bikur Cholim, Inc. v. Vill. of Suffern*, 06–CV–7713, 2009 WL 1810136, at *8-9 (S.D.N.Y. June 25, 2009) (dismissing equal protection class-of-one claim because "plaintiffs have made no allegations of similarly situated property owners . . . [and w]ithout any comparators . . . plaintiffs' claim under the Equal Protection Clause cannot stand"); *Talley v. Brentwood Union Free Sch. Dist.*, 08-CV-0790, 2009 WL 1797627, at *8 (E.D.N.Y. June 24, 2009) (dismissing plaintiff's class of one equal protection claim because "the absence of factual allegations of any similarly situated individual is fatal to [the] claim"); *Econ. Opportunity Comm'n of Nassau Cty. v. Cty. of Nassau, Inc.*, 47 F. Supp. 2d

353, 370 (E.D.N.Y. 1999) (dismissing equal protection claims because plaintiffs did not allege "similarly situated entities which were treated differently from the plaintiffs"); *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 341 (E.D.N.Y. 2014) (finding plaintiff failed to state a claim for violation of the Equal Protection Clause because plaintiff had "not adequately alleged the extremely high degree of similarity between herself and her fellow students to survive a motion to dismiss").

      **C.    Whether Plaintiffs' Remaining Claims (Asserted in Their First and Second Causes of Action) Should Be *Sua Sponte* Dismissed Without Prejudice**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth below.

Where (as here) a district court has dismissed all claims over which it has original jurisdiction, the court may decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if . . . not present a federal court should hesitate to exercise jurisdiction over state claims."); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); *Hurley v. Cty. of Yates*, 04-CV-6561, 2005 WL 2133603, at *3 (W.D.N.Y. Aug. 31, 2005); *accord, Middleton v. Falk*, 06-CV-1461, 2009 WL 666397, at *9 (N.D.N.Y. Mar. 10, 2009) (Suddaby, J., adopting Report-Recommendation by Homer, J.). The decision is a discretionary one, and its justification "lies in considerations of judicial economy, convenience and fairness to litigants[.]"

*United Mine Workers of Am.*, 383 U.S. at 726; *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 [1988]); *Jones v. Ford Motor Credit Co* ., 358 F.3d 205, 214 (2d Cir. 2004) ("[W]here at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values [of] economy, convenience, fairness, and comity.").

Here, after carefully considering the relevant factors (i.e., economy, convenience, fairness and comity), the Court finds that they weigh decidedly in favor of declining to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims (i.e., the first two causes of action of Plaintiffs' Complaint). The Court notes that it may *sua sponte* render this determination. *See Rothenberg v. Daus*, 08-CV-0567, 2015 WL 1408655, at *11, n.12 (S.D.N.Y. March 27, 2015) ("[P]laintiffs' contention that the court may not decline to exercise supplemental jurisdiction *sua sponte* contravenes black letter law."); *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 293 (E.D.N.Y. 2014) ("[T]he Court *sua sponte* declines to exercise supplemental jurisdiction over the remaining [state law] claims against [defendants]."). As a result, Plaintiffs' first two causes of action are dismissed without prejudice to refiling in New York State Court within thirty (30) days of this Decision and Order, pursuant to 28 U.S.C. § 1367(d).

**ACCORDINGLY** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED** that the third, fourth, fifth, sixth and seventh causes of action in Plaintiffs' Complaint as well as any claim for punitive damages (Dkt. No. 1) are **DISMISSED**; and it is further

**ORDERED** that Plaintiffs' first two causes of action are **DISMISSED without prejudice** to refiling in New York State Court within thirty (30) days of this Decision and Order, pursuant to 28 U.S.C. § 1367(d). The Clerk is directed to enter judgment and close this case.

Dated: March 31, 2016
Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge